**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| ROTHSCHILD CONNECTED DEVICES INNOVATIONS, LLC, | § § § | Case No. 2:15-cv-01877-JRG-RSP |
| Plaintiff | § § | |
| v. | § § | LEAD CASE |
| AMERICAN HONDA MOTOR CO., INC. | § § | |
| Defendant. | § § | |

**DEFENDANTS' RESPONSIVE CLAIM CONSTRUCTION BRIEF**

## I.     <u>INTRODUCTION</u>

The Rothschild patent describes a way of connecting a mixing device—e.g., a soda dispenser or a shampoo dispenser—to the Internet to allow a consumer to customize the mix of ingredients in his or her consumable product.  The application describes the invention as follows:

> The system and method of the present disclosure will enable a user to customize products containing solids and fluids by allowing a server on the global computer network, e.g., the Internet, to instruct the hardware mixing the solids and fluids of the user's preferences for the final mix.

'090 Patent, 1:57-62.  Inexplicably, Rothschild sued a diverse set of defendants whose products connect to the Internet, but who otherwise are not in the business of mixing consumable liquids or solids and whose products have absolutely nothing to do with the purported innovation of the asserted patent.

Defendants only seek to construe three terms.  Defendants' proposed constructions reflect the correct understanding of the terms at issue, when read in the context of the specification and prosecution history.  These constructions also happen to result in claims that actually resemble what Plaintiff discloses in its patent.  Plaintiff, on the other hand, disingenuously seeks a "plain language" construction for each term that attempts to capitalize on ambiguity in the claims as written, which in application would be anything but a "plain language" understanding of the patent's appropriate scope.

## II.     <u>BACKGROUND</u>

### <u>The Disclosed Innovation</u>

The asserted patent, U.S. Patent No. 8,788,090 (the "'090 Patent"), is directed to a "system and method for creating a personalized consumer product."  Ex. 1 ('090 Patent), 1:16-

19.[1]  The patent discloses that "[t]he sale of consumer products such as beverage products, health products and perfumes" is big business, and "the user wants to have a wide and yet specific choice for the products that they use."  '090 Patent, 1:20-40.  The specification discloses a way of controlling the mixing of ingredients containing solids and fluids to create just that result:

> A system and method **to enable users to control mix parameters of a product** from the global computer network to obtain a personalized consumer product are provided. The system and method of the present disclosure will **enable a user to customize products containing solids and fluids** by allowing a server on the global computer network, e.g., the Internet, to instruct the hardware mixing the solids and fluids of the user's preferences for the final mix.

*Id.*, 1:55-62 (emphasis added).  Figure 2, reproduced below, provides a generic depiction of the disclosed system:



Claim 1 (the sole asserted claim) is reproduced below and recites "[a] system for customizing a product according to a user's preferences."

1. A system for customizing a product according to a user's preferences

---

[1] Exhibit numbers refer to exhibits attached to the Declaration of Lillian J. Mao in Support of Defendants' Responsive Claim Construction Brief, filed concurrently herewith.

comprising:

a remote server including a database configured to store a product preference of a predetermined product for at least one user; and

a first communication module within the product and in communication with the remote server;

wherein the remote server is configured to receive the identity of the predetermined product and the identity of the at least one user, retrieve the product preference from the database based on the identity of the predetermined product and the identity of the least one user and transmit the product preference to the first communication module.

<u>The Prosecution Disclaimer</u>

During prosecution, claim 1 (then numbered as claim 9) was rejected over the Bartholomew prior art reference.  To distinguish the claimed invention, the applicant amended the claim to explicitly recite that the "first communication module" was *within* the product"—the "product" in this sense being the machine that mixes the ingredients, as depicted in Figure 2. Ex. 2 (1/13/2014 Amendment) at 2.  Consistent with this amendment, the applicant argued that Bartholomew lacked two features that are required of the claimed "product": (1) the aforementioned "communication module," and (2) the "pre-mixed elements to be mixed based on a user's product preferences."  *Id.* at 6-7 ("The receptacles of Bartholomew et al. receive the different materials to form the final product, however, *the receptacles do not include a communication module nor pre-mixed elements to be mixed based on a user's product preferences*." (emphasis added)).  Instead, the applicant explained, "Bartholomew et al. is directed to a nail polish color selection system including a computer 18, a dispenser 12 and external receptacles 20 (FIG. 2), 40 (FIG. 3).  The computer 18 controls a controller of the dispenser 12 to enable different chambers 14 of the dispenser 12 to output different materials into the receptacles 20, 40 to form a final product, the receptacles 20, 40 being external from the

dispenser 12 and computer 18." *Id.* at 6.  That is, Bartholomew distributed across three distinct components what the '090 Patent requires within a single device: the "product."  The examiner found the applicant's argument persuasive and allowed this narrowed claim to issue as claim 1. Ex. 3 (Notice of Allowance) at RCDI 000025.

## III.  CLAIM CONSTRUCTION PRINCIPLES

Claim terms should be given the meaning they would have to a person of ordinary skill in the art at the time of the application in the context of the specification and prosecution history. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-17 (Fed. Cir. 2005) (*en banc*).  While the specification is the "single best guide to the meaning of a disputed term," *id.* at 1315, "the prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be," *id.* at 1317.

In particular, the meaning of a claim term is limited by any "clear and unmistakable disavowal of scope during prosecution."  *Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1374 (Fed. Cir. 2008) (citation omitted); *accord Southwall Techs., Inc. v. Cardinal IG co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995) ("The prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution.").  "[A]n applicant's argument that a prior art reference is distinguishable on a particular ground can serve as a disclaimer of claim scope even if the applicant distinguishes the reference on other grounds as well."  *Am. Piledriving Equip., Inc. v. Geoquip, Inc.*, 637 F.3d 1324, 1336 (Fed. Cir. 2011) (citation omitted).

## IV.  ARGUMENT

Defendants identify three terms for construction: "product," "predetermined product," and "product preference."  Construing these terms will help the jury understand the asserted

claim's confusing use of the word "product" to refer to multiple things, and will define the
proper scope of the patent in light of the disclaimers the applicant made during prosecution.

### A.    "Product"

| Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "product" | Plain and ordinary meaning | "an article containing a communication module and elements to be mixed based on a user's product preferences" |

The meaning of the term "product" in the asserted claim is informed by the prosecution
history.  The specification of '090 Patent uses the term "product" in two different ways.  At
times, "product" refers to the device that performs the customization, *e.g.*, a beverage dispenser.
At other times, "product" refers to the result of that customization, *e.g.*, the dispensed beverage.
Although both usages are within the ordinary meaning of "product" (when considered in a
vacuum), to use both in a single context is oftentimes confusing:  the "product" (sense 1)
receives preferences so as to produce a customized "product" (sense 2).  The following example
shows how the specification uses both meanings in the course of a single sentence:

> A system and method for creating a personalized consumer product are provided. The
> system and method of the present disclosure enables a user, e.g., a consumer, to
> customize ***products containing solids and fluids*** by allowing a server communicating
> over the global computer network, e.g., the Internet, to provide product preferences of a
> user to ***a product or a mixing device***, e.g., a product or beverage dispenser. . . . . It is to
> be appreciated system and method of the present disclosure would apply to the mixing of
> many ***consumable products, including toothpaste, shampoos, conditioners, beverages,***
> ***soaps, etc.***

'090 Patent, 2:23-29, 2:55-58 (emphasis added).  The plain language of claim 1, however,
provides guidance as to what "product" must mean in the context of the claim.

Claim 1 refers to both a "product" and a "predetermined product," each as a different
antecedent basis:

> 1. A system for customizing *a product* according to a user's preferences comprising: a remote server including a database configured to store a product preference of *a predetermined product* for at least one user; and
>
> a first communication module within *the product* and in communication with the remote server;
>
> wherein the remote server is configured to receive the identity of *the predetermined product* and the identity of the at least one user, retrieve the product preference from the database based on the identity of *the predetermined product* and the identity of the least one user and transmit the product preference to the first communication module.

These two different terms are presumed to have different meanings. *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333 n.3 (Fed. Cir. 2006) ("In the absence of any evidence to the contrary, we must presume that the use of . . . different terms in the claims connotes different meanings.") (citation omitted); *Power-One, Inc. v. Artesyn Techs., Inc.*, 2007 U.S. Dist. LEXIS 20458, *21-22 (E.D. Tex. Mar. 22, 2007) (Love, J.).  The plain language of the claim, in view of the specification, shows the only possible conclusion is that "product," without the modifier, refers to the device that does the customizing and not the customized result that is dispensed.  *See, e.g.*, '090 Patent, 2:6-7 & Fig. 2 (referring to mixer as a "consumer product"). In particular, the claim recites that the "product" contains a communication module ("a first communication module *within the product*"), which would be impossible of the consumable shampoo or beverage "product" of the preferred embodiments.  That requirement, added by amendment, overrides any contrary interpretation that may be implied by the preamble's reference to "customizing a product."

Defendants' proposed construction flows directly from how the applicant described the scope of the invention during prosecution.  Specifically, the applicant argued that the receptacles of Bartholomew lacked two things that were required of the claimed "product": (1) a communication module, and (2) pre-mixed elements to be mixed based on a user's product preferences.  *See* Ex. 2 at 6-7; *see also* Section II *supra*.  In general, a "product" is "an article or

substance that is manufactured or refined for sale." Ex. 4 (Concise Oxford Dictionary) at 706.

But the applicant's arguments during prosecution were a "clear and unmistakable disavowal" of

the scope of the term "product," surrendering coverage of articles not having those two required

characteristics. *See Am. Piledriving*, 637 F.3d at 1336 (limiting scope of term based on

applicant's arguments to distinguish prior art). Thus, "product" in the '090 Patent should be

construed to mean "an article containing a communication module and elements to be mixed

based on a user's product preferences."

### B.   "Predetermined Product"

| Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "predetermined product" | Plain and ordinary meaning | "consumable dispensed from the product" |

In contrast to the term "product"—which is an article with elements to be mixed, as

explained above—the claims use "predetermined product" to refer to the resulting mixture, *i.e.*,

the output of the customization. This is implied in the requirement that the remote server

retrieves the product preference "based on the identity of the predetermined product and the

identity of the at least one user" and transmits the preference to the "product" (*i.e.*, the article

with the elements to be mixed). Logically, the server must know (1) the identity of the user and

(2) the identity of the thing to be customized in order to retrieve the correct preference.

"Predetermined product" is the latter.

As noted above, the specification confusingly uses two senses of the word "product."

Defendants' proposed construction seeks to provide clarity (and avoid indefiniteness) by

defining "predetermined product." That is, under Defendants' proposal, "product" refers to the

device that performs the customization, whereas "predetermined product" is referred to as a

"consumable," consistent with the specification's references to "consumable product."  *See, e.g.*, '090 Patent, 1:47-51, 2:55-58.

Plaintiff's purported "plain meaning" interpretation is at odds not only with the specification and prosecution history, but with the claim language itself.  In an attempt to shoehorn Defendants' products into the claim language, Plaintiff proposes that "predetermined product" and "product" mean the same thing, despite the fact that the claims recite two distinct elements.  *See Applied Med. Res. Corp.*, 448 F.3d at 1333 n.3 ("In the absence of any evidence to the contrary, we must presume that the use of . . . different terms in the claims connotes different meanings.") (citation omitted); *Power-One, Inc.*, 2007 U.S. Dist. LEXIS 20458 at *21-22.  For example, as to Defendant T-Mobile, Plaintiff alleges that the "product" is a cell phone, and the "predetermined product" is also a cell phone—presumably the same one.  Ex. 2 at 6-7.  But treating the two terms the same makes no sense when applied back to the disclosed embodiments.  For example, "product" must refer to the beverage dispenser, since the mixed beverage does not contain a communication module.  Under Plaintiff's interpretation then, "predetermined product" would also refer to the dispenser.  But the dispenser is not the thing being customized; the dispenser remains the same machine regardless who is using it.  Rather, the relevant preferences depend on the identity of the user and the type of beverage.  Plaintiff's position is inconsistent with the specification and should be rejected.

Thus, "predetermined product" should be construed to mean "consumable dispensed from the product."

## C.   **"Product Preference"**

| Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "product preference" | Plain and ordinary meaning | "preferred mix of elements" |

The construction of "product," addressed above, guides the understanding of "product preference."  Since the "product" contains "elements to be mixed based on a user's product preferences," the term "product preference" must encompass a user's preference for how the elements are to be mixed.  This is fully consistent with the specification.  For example, the specification refers to storing product preferences so that future purchases can be mixed in the same way.  *See, e.g.*, '090 Patent, 2:50-53 ("The computer server also stores the specific consumer's product preferences, so that future shampoo purchases of the same brand can also be mixed according to the consumer's stored preferences.").  The specification also explicitly states that the proper mix is based on the user's product preferences.  *See, e.g.*, *id.*, 3:2-5 ("The server 104 will formulate the proper mix of elements, e.g., ingredients, for the product according to the user's product preferences."), 4:41-44 ("The communication module 214 will communicate to the controller 212 the specific valve settings for each valve based on the user's product preferences."), 8:31-49.

In contrast, while Plaintiff purports to advocate a "plain meaning" interpretation of the term "product preference," Plaintiff has actually applied the term far beyond any reasonable understanding imparted by the specification.  For example, in Defendant T-Mobile's accused products, Plaintiff identifies either a "usage controls set" or "the user's desired usage/safety controls" as the alleged "product preference."  Ex. 5 at 8.  But these "controls" have nothing to do with customizing the alleged "product" (a cell phone, which also cannot be correct in light of the proper interpretation of "product" discussed above).  Rather, they are settings that regulate a

particular individual's access to T-Mobile's cellular network services, regardless of what device is used to access those services.  Plaintiff's application of the term "product preference" is completely divorced from the '090 Patent's disclosure and even more at odds with the applicant's narrow characterization of the invention during prosecution.

Plaintiff's infringement theory is also inconsistent with positions it took to distinguish claim 1 from prior art asserted in *inter partes* review proceedings.  There, Plaintiff argued to the Patent Office that claim 1 relates to "controlling the inherent features of a product" as distinct from controlling "external services being rendered to the devices."  Ex. 6 (Patent Owner's Preliminary Response to Petition for Inter Partes Review, PPX Corp. v. Rothchild Connected Devices Innovations, LLC, IPR2016-00443 (P.T.A.B. Apr. 11, 2016)) at 29-31, 41 (distinguishing prior art customized email services from the claimed product customization). Plaintiff's proposal to apply a broader, "plain meaning" interpretation here should be rejected.

Thus, consistent with the specification and prosecution history, "product preference" should be construed to mean "preferred mix of elements."

## V.    **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court construe the following terms of claim 1 of the '090 Patent:

| Term | Construction |
|---|---|
| "product" | an article containing a communication module and elements to be mixed based on a user's product preferences |
| "product preference" | preferred mix of elements |
| "predetermined product" | consumable dispensed from the product |

Dated: August 24, 2016

*/s/ Lillian J. Mao*

Alex V. Chachkes (NY Bar No. 3035078)
achachkes@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 W 52nd Street
New York, New York  10019-6142
Telephone:      +1-650-614-7400
Facsimile:      +1-650-614-7401

Mark S. Parris (*Pro Hac Vice*)
mparris@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
701 5th Avenue, Suite 5600
Seattle, WA 98104-7097
Telephone:      +1-650-614-7400
Facsimile:      +1-650-614-7401

Lillian J. Mao (California Bar No. 267410)
lmao@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone:      +1-650-614-7400
Facsimile:      +1-650-614-7401

Attorneys for Defendant T-Mobile USA, Inc.

/s/ *David C. Dotson*

L. Norwood Jameson (Ga. Bar No. 003970)
wjameson@duanemorris.com
Matthew Yungwirth (Ga. Bar No. 783597)
msyungworth@duanemorris.com
David Dotson (Ga. Bar No. 138040)
dcdotson@duanemorris.com
S. Neil Anderson (Ga. Bar No. 757113)
snanderson@duanemorris.com
DUANE MORRIS LLP
1075 Peachtree St. NE; Suite 2000
Atlanta, GA 30309-3929
Telephone: 404.253.6900

Michael E. Jones (Texas Bar No. 10929400)
mikejones@potterminton.com
POTTER MINTON PC
110 N College, Suite 500

Tyler, TX 75710-0359
Telephone:  930-597-8311

Attorneys for Cellco Partnership d/b/a Verizon
Wireless

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this notice of compliance was served on all counsel who have consented to electronic service, Local Rule CV-5(a)(3)(A), on this date August 24, 2016.

*/s/ Lillian J. Mao*
Lillian J. Mao